Grace K. DANIELS, Plaintiff,

v.

McDONOUGH POWER EQUIPMENT, INC., et al., Defendants.

Civ. A. No. E76–85(R).

United States District Court, S. D. Mississippi, E. D.

April 27, 1977.

Paul H. Holmes, Alfred B. Jernigan, Jr., Hattiesburg, Miss., for plaintiff.

Hassell H. Whitworth, Jackson, Miss., for defendant McDonough Power Equipment, Inc.

M. M. Roberts, Hattiesburg, Miss., for defendant Alexander Hardware Co., Inc.

William J. Gunn, Meridian, Miss., for defendants M. Hardee Bassett and Lizzie Bassett.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

Mr. and Mrs. Bassett, individual defendants who are Mississippi residents, Alexander Hardware Company, Inc., a Mississippi resident corporation, and McDonough Power Equipment, Inc., a Georgia corporation which has not qualified to do business in Mississippi and which denies that it was doing business in Mississippi at the time the cause of action allegedly arose or is now doing business in Mississippi, have in their respective answers, filed motions to dismiss generally on the grounds that the complaint fails to state a cause of action, and, specifically on grounds peculiar to each motion.

The Bassetts attached to their motion a copy of a sworn statement by plaintiff absolving the Bassetts from any negligence and liability arising out of the accident which resulted in plaintiff's injuries and in which statement plaintiff agreed not to sue the Bassetts. The Bassetts have also filed a number of affidavits in support of their motion to dismiss as to which the plaintiff has filed counter-affidavits.

Alexander Hardware predicates its motion to dismiss on the assertion that it comes within the rule of *Shainberg Co. of Jackson v. Barlow*, Miss., 258 So.2d 242, and is absolved of any liability for a defective product, when it sold the riding lawnmower in the same condition, without alteration, as when received from the manufacturer's distributor, no patent defect being obvious. This defendant submitted affidavits to this effect in support of its motion, which have not been countered by plaintiff.

McDonough, the manufacturer, has based its motion to dismiss on the grounds that the Court lacks jurisdiction over it and is without territorial jurisdiction, specifically for the reason that plaintiff, being a non-resident, may not avail herself of Mississippi's long-arm statute to acquire process on a corporate non-resident, which is not qualified to do business in Mississippi, nor has it done nor is it doing any business in the State of Mississippi.

These motions, although filed in conjunction with answers, were noticed for a hearing prior to trial. Since that hearing, plaintiff has filed counter-affidavits to those supporting the Bassetts' motion to dismiss, and the Court, pursuant to Rule 12(b), Federal Rules of Civil Procedure, treats the motion as one for summary judgment.

Although all parties have submitted briefs, the plaintiff has not offered counter-

affidavits to those offered by Alexander Hardware, and, accordingly, the Court treats that motion as one to dismiss for failure to state a cause of action upon which relief may be granted, the test being based on the assumption that the allegations of the complaint are true.

Nor has plaintiff filed any counter-affidavits to McDonough's motion, which the Court treats as a motion to dismiss on the specific ground argued, again treating the allegations of the complaint as true, or for a judgment on the pleadings under Rule 12(c).

Before ruling on the motions, it is well to briefly review the allegations.

Plaintiff, a resident of Mobile, Alabama, while visiting relatives, the Bassetts, in Jasper County, Mississippi, fell from the Bassetts' riding lawnmower which she was operating and sustained injuries. In her amended complaint she charges that, as a guest of the Bassetts, she was a licensee, but when she began mowing the lawn at the Bassetts' request, she became an invitee, and, as such, they failed to properly instruct her in the operation of the mower, failed to warn her of dangers in the yard, and failed to supervise her operation of the mower until she could operate it safely.

As to Alexander Hardware, plaintiff charged that it negligently sold a product which was unsafe for its intended use, and *warranted to the public that the product was safe for its intended use.*

As to McDonough, plaintiff charged that it was negligent in the designing and manufacturing of a mower that was patently unsafe in that it did not have a safety device that automatically disengaged the wheels or the blades or both when there was no weight on the seat.

1. *Bassetts' motion to dismiss*

■ In their brief, the Bassetts refer to plaintiff's sworn statement, taken on May 28, 1974 at a Mobile hospital where plaintiff was being treated for her injuries of May 14, 1974, as a covenant not to sue. Apparently because there was no consideration or insufficient consideration, the Bassetts also refer to the instrument as an admissible admission against interests in which she clearly absolves the Bassetts of any negligence or liability for the accident and in which she stated she would make no claim or bring suit against them on account of her injuries. Filed of record is the affidavit of both the Bassetts denying that they had invited plaintiff to visit them, and denying that she was requested to use the mower to cut the Bassetts' grass. They charge that plaintiff insisted on using the mower despite Mr. Bassett's implicit instructions not to. They acknowledged that they requested an attorney to prepare the statement which plaintiff read and signed some two weeks after the accident in their presence and in the presence of others, at which time plaintiff appeared alert and knowledgeable about what she signed. Affidavits of Mr. and Mrs. R. A. Wooten, Mrs. Wooten being a sister of plaintiff, and of Mrs. R. A. Weir, another sister of plaintiff, are of the same import.

After the complaint was amended to charge that plaintiff was an invitee of the Bassetts, plaintiff filed the affidavits of her daughter, Mary F. Daniels, and of the daughter's husband, Frank C. Daniels, in opposition to the Bassetts' motion, in which they both said that they had talked to Mr. Bassett after the accident. Mrs. Daniels said that Mr. Bassett admitted asking plaintiff if she was going to finish mowing the yard and her reply was that she would if he would start the mower. Affiant stated that Mr. Bassett admitted starting the mower and then left the yard and was not present when the plaintiff was injured. Mr. Daniels, in his affidavit said that Mr. Bassett admitted starting the mower for plaintiff and leaving. Mr. Daniels stated that he had read the statement executed by plaintiff in the Mobile hospital, that he and his wife arrived at the hospital after the statement was taken, and as the Bassetts were leaving, and that plaintiff was in such a condition that she was not competent to read and understand what she had signed. Plaintiff's daughter, in her affidavit, also said that the statements in the affidavits of

the Bassetts, the Wootens and Mrs. Weir in regard to whose idea it was for plaintiff to operate the mower were incorrect.

Plaintiff, herself, filed a counter-affidavit, having read the affidavits of the Bassetts, Wootens and Mrs. Weir. Contrary to their statements, plaintiff stated that she left her home in Mobile to visit her sisters in Jasper County, and had been invited by the Bassetts to visit them and assist in the care of Mrs. Bassett who had been hospitalized. Without iterating the details, her statements are in direct conflict with those offered by the Bassetts, saying that it was at their instigation that she undertook to operate the lawnmower without knowing how to turn the mower off. As to her statement executed at the hospital, she said the Bassetts, Mrs. Wooten and Mrs. Weir brought the statement to her to sign, saying that her signing of it would prevent her son-in-law from suing the Bassetts and that the Bassetts promised she would receive $10,000.00 from their insurance company. Affiant stated that at the time she was in great pain and had been receiving large amounts of drugs, a list of which was attached to her affidavit. She further said she did not read the statement but signed it on the representations of the Bassetts.

In a letter to the Court of December 17, 1976, plaintiff's attorney attached a copy of an affidavit of Ronald R. Lubritz, M.D. to the effect that it is a medical probability that a patient within three to three and one-half hours of taking certain doses of drugs as listed in the affidavit would be incompetent to understand what she had done. The drugs and the size dosage were the same as those plaintiff said she took. Although the Court notes that the original of this affidavit is not of record in the court file, the Court has considered the tenor of the affidavit as it affects the motion.

Under Rule 56, Federal Rules of Civil Procedure, the Court may not grant a summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material facts. Suffice it to say that the pleadings, movants' affidavits, and plaintiff's counter-affidavits are fraught with disputed facts, material to the case.

Accordingly, the Court denies the Bassetts' motion to dismiss, treated as a motion for summary judgment.

### 2. *Motion of Alexander Hardware*

■ Plaintiff averred that Alexander Hardware purchased the lawmower directly or indirectly from the manufacturer and sold same to the Bassetts. Plaintiff charged that Alexander Hardware breached its duty to the consuming public by selling a product unsafe for its intended use. If this were the only charge, this defendant's affidavits of its president and service manager that the lawnmower, when sold, had two safety switches; that newer models contain the same safety switches; that the lawnmower was manufactured by a reputable manufacturer and is one of the better types on the market; and that it was sold to the Bassetts without alteration from the time it was received by Alexander Hardware until sold and had no visible or known defects, would, undisputed as they are, bring the hardware company within the rule laid down in *Shainberg Co. of Jackson v. Barlow,* Miss., 258 So.2d 242, which is stated as follows:

> "Where the wholesaler or distributor purchases an article from a reputable and reliable manufacturer, sells it to a retailer in its original condition, and the retailer in turn sells the article—exactly as it came from the manufacturer—to a customer in the regular course of business, no duty devolves on the wholesaler or retailer to inspect and discover a latent defect."

Plaintiff has not offered any evidence contrary to these sworn statements, by affidavit or otherwise, but contends by way of her brief, that Alexander Hardware did assemble the lawnmower from its original packaging, failed to assemble it properly, and that the lack of a "deadman's switch" was an open and obvious defect which the hardware company should have discovered.

In her affidavits, plaintiff said that she fell from the lawnmower because she did not know how to stop it. Whether she meant she did not know how to stop the blades from turning or the forward momentum of the machine, or both, could have nothing to do with the way in which the machine was assembled. The service manager, in his affidavit, stated that he examined the machine after the accident, including the switches, and found the machine in proper working order. To the Court's way of thinking, the issue boils down to whether or not, at the time the machine was manufactured, whether the customs and standards then applicable, required the installation of a deadman's switch, the lack of which would be such an open and obvious defect as to constitute negligence on the part of Alexander Hardware in the face of plaintiff's additional allegation that the hardware company warranted to the public that the product was safe for its intended use, if such a warranty exceeded that of the manufacturer. It is with this narrow issue in mind, that the Court finds that it must deny the motion of Alexander Hardware to dismiss.

### 3. *Motion of McDonough*

■ McDonough, like the other defendants, incorporated its motion to dismiss in its answer, but advanced the motion for a hearing prior to a trial on the merits. The motion claims that the Court is wholly without jurisdiction over the defendant in that the attempted process by virtue of service of process on the Secretary of State of the State of Mississippi pursuant to the long-arm statute, Section 13–3–57, Mississippi Code of 1972, is not available to the non-resident plaintiff inasmuch as McDonough was not found doing business in the State of Mississippi. This Court has on at least two occasions dealt with this issue. In one, a non-resident plaintiff, injured in an airplane crash in Mississippi, undertook to secure process over the defendants by way of the long-arm statute. When the wording of the statute was called to the attention of the plaintiff, he promptly amended his declaration to show that he was a resident of Mississippi at the time of the crash and the issue posed by the statute was obviated. The other instance involved a plaintiff, whose cause of action and injury occurred in a foreign state, who selected the federal court in the Southern District of Mississippi as her forum, and who utilized both the Mississippi chancery attachment statutes and three other statutes providing for service of process on foreign corporations doing business in the state, including the long-arm statute. At a time in the proceedings when the defendant filed a motion to dismiss on the grounds that the limitations statute of the foreign state should apply rather than the longer period in Mississippi, the Court, mindful of Judge Keady's decision in *American International Pictures, Inc. v. Morgan*, D.C., 371 F.Supp. 528, on which McDonough relies here, noted in its opinion on the motion that inasmuch as the plea of a statute of limitations is a defense, the defendant had waived its right to object to service under the long-arm statute. See another opinion by Judge Keady in *Ryan v. Glenn*, D.C., 52 R.F.D. 185.

In *Morgan* Judge Keady dealt with a foreign corporation, not qualified to do business in Mississippi, which sued a non-resident defendant for an accounting under licensing agreements executed in another state. The defendant readily conceded that he was doing business in Mississippi and would be subject to a cause of action arising out of his local activities, but he asserted that the long-arm statute could not be invoked by a non-resident corporation which had not qualified to do business in Mississippi. Judge Keady, relying in part on *C. H. Leavell & Co. v. Doster*, Miss., 211 So.2d 813, which held that a non-resident corporation which had qualified to do business in Mississippi should have the same rights and privileges as a resident citizen, concluded that this holding had been construed as authority for confining the use of the statute to Mississippi residents only. The statute delineates three categories of non-residents subject to its reach: (1) a non-resident who shall make a contract with a

resident to be performed in whole or in part in this state; (2) a non-resident who shall commit a tort in whole or in part in this state against a resident, and (3) a non-resident who shall do only business or perform any character of work or service in the state. By reason of the language describing the third category which does not include a reference to a citizen of this state nor that the character of business be related to the cause of action, Judge Keady noted that the non-resident plaintiffs in the case before him, who had not qualified to do business in the state argued that they, nevertheless, had the right to sue under the third category, because of language in *Doster*, wherein Chief Justice Gillespie of the Mississippi Supreme Court said:

"The defendant in this case is also subject to the jurisdiction of the Courts of Mississippi under category (3) of the first sentence of Section 1437 [now Section 13–3–57]. Any non-resident is subject to suit in this state who shall do any business or service in this state if the action or proceeding accrues from acts in this state."

Judge Keady disagreed with the plaintiffs' contention, holding that to accept it would be to greatly expand the scope of the third category beyond that of the first two categories which are expressly limited to residents. Judge Keady stated his ultimate conclusion as follows:

"We are thus of the view that by the enactment of the state's long-arm statute, as consistently construed by prior cases, the state legislature intended to afford a remedy only to residents who might have claims or grounds of action against non-residents from activity done within the state, thus obviating the necessity for its citizens to resort to a foreign jurisdiction for enforcement of their rights. When taken in its entirety, the long-arm statute was clearly enacted for the benefit of residents only, and the legislation has not been expanded through the process of judicial interpretation to include non-resident plaintiffs not qualified to do business within the state. Contrary to plaintiffs' assertions, we perceive no defect under federal constitutional standards for limiting a long-arm statute to resident plaintiffs since a state is not obliged to make its courts available to non-residents, who themselves are not doing business in the state, to sue other non-residents." (Underscoring added).

This Court concurs with Judge Keady's conclusion where the within-the-state activity of the non-resident corporation is unrelated to the non-resident's cause of action, as it was in the case before him. However, the Court has a grave reservation as to whether this same construction should apply here. For the purposes of the motion sub judice, at this stage of the pleadings the Court is bound to assume that McDonough had sufficient minimal contacts with the state, one of which was the sale of a defective product, a defect which presumably occurred in the state of manufacture but which caused injuries in this state. The Court's reservation arises out of the view of Chief Justice Gillespie's above quoted portion of his decision in *Doster*, coupled with the policy of the Mississippi legislature appearing in Section 79–1–27 which states that any corporation claiming existence under the laws of another state, found doing business in this state shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not. (Underscoring added). The Court concedes that this statute is a doctrinal policy, not necessarily consistent with a statutory means of acquiring process over a non-resident corporation. However, it is difficult for this Court to believe that the legislature would enunciate this policy and not afford a means to acquire jurisdiction over a non-resident corporation doing business in the state, particularly when the business done gives rise to the cause of action. Nor do the annotations under this statute confine the cause of action to resident plaintiffs, although all appear to be. This being a diversity of citizenship case, it goes without saying that the Court is Erie-bound to apply the law of Mississippi. Although defendant in its brief contends that it is not subject to the jurisdiction of this Court by virtue of Judge

Keady's construction of the long-arm statute, defendant admits in its proposed findings of fact and conclusions of law that the Mississippi Supreme Court has not squarely addressed itself to the question of whether or not a non-resident of Mississippi may thus invoke the jurisdiction of a Mississippi court. This Court is of the same impression. In its effort to anticipate a decision on this point, as stated above, it is difficult to believe that the Mississippi Supreme Court would deny utilization of the long-arm statute by a non-resident plaintiff against a non-resident defendant whose business activities within this state gave rise to the asserted cause of action, if no other process statute is available. The only other two statutes providing for process on a non-resident corporation, Sections 79–3–229 and 79–1–29, provide that the process must be served on an agent registered for that purpose or an agent "no matter what character of agent such person may be." In the absence of the availability of either of these statutes, the Court must deny the motion to dismiss on the ground as claimed. At the same time the Court concludes that the defendant has not waived its right to claim that its business activities in the state, including the sale of the lawnmower to the Bassetts, are insufficient or would offend the "traditional notions of fair play and of substantial justice," or any other grounds asserted, but not argued, under its motion to dismiss. On the ground asserted here, and, in the absence of any Mississippi Supreme Court decision squarely on the issue posed here, the Court denies the motion of McDonough to dismiss.

An appropriate order or orders may be submitted in accordance with this opinion within the time provided for by the local rules of this Court.